Appellant by Daniel Fumagalli and Future Diagnostics Group Appellant by Eddie Manelis. It's actually David Texson for Provena. I'm sorry, that's not what's on my list. Thank you. Thank you. May I please have the floor, sir? My name is David Texson and I represent Provena. First of all, I would just like to thank the 3rd District for accepting our interlocutory appeal. This case has been pending for many years and we are hoping that we can get a sound decision from the panel. I also just would like to mention that I'll be primarily addressing the first issue for interlocutory appeal in my co-defense counsel. Mr. Manelis will be primarily focusing on the second issue for interlocutory appeal. Now, given the time limitations, if there are any questions about the third or fourth issue for interlocutory appeal, I'd be happy to answer them. But I think I'll focus my comments primarily on subject matter jurisdiction. Thank you. Justices, from our perspective, the decision of this case turns on the exercise of power. More specifically, the exercise of power by the Illinois Attorney General's Office over Key Tam litigation. And that makes perfect sense. Key Tam plaintiffs are unique litigants. Unlike most plaintiffs, they don't have compensatory damages and they're not seeking rights as an aggrieved party, such as an injunction. To the contrary, Key Tam plaintiffs hope to step into the shoes of the government and share in the government's recovery of proceeds. In this case, the Illinois Insurance Claims Fraud Prevention Act, which I'll refer to as the ICFPA. However, if a Key Tam plaintiff is the second to file, they have to survive the vetting process, which is properly exercised by the government in the form of the Attorney General's Office. And my overarching comment about this case and the lack of subject matter jurisdiction is simply that the Blandinghams did not survive that vetting process. The AG's office conducted their investigation, worked with the Blandinghams and determined they simply were not original sources and barred them from going forward. There's quickly, there's three cases. I know they're cited in our papers, but there's a consistency between the Scaccitti case, the Illinois Supreme Court decision, and then the Buehler-Shadd v. Burlington Coal Factory case, followed by this Court's decision in the Seporda case. And the common theme that I'm talking about begins with Scaccitti, where the trial court determined that the Illinois Whistleblower Protection Act was unconstitutional because it usurped the power of the AG's office to direct litigation on behalf of the state. It's a very thoughtful discussion, and I certainly commend that case to you. But the reason the Supreme Court decided that the Whistleblower Protection Act was not unconstitutional turned heavily on the term, the section of the Whistleblower Act, which was the same as the ICFPA, which gives the Attorney General the right to dismiss a ketan action. As long as you get noticed in a hearing, there's no bad faith, you're entitled to dismiss that action. Moving on, I will comment quickly, December of 2006, I believe it was the first district appellate court, it was the first court in the Buehler-Shadd v. Burlington Coal Factory case that had to address the specific issue of a motion to dismiss a ketan plaintiff. And I believe that was based on the Illinois False Claims Act. In my view, there's a very thoughtful discussion about the exercise of power by the Attorney General's office when moving to dismiss a ketan case. And they're discussing different standards in the federal case law based on the Federal False Claims Act. They followed Scicchiti. And this is where I pause and really reflect on the standards, because I believe it is the same standards that should guide this court today. This court, and really no court, should overturn the AG's decision to dismiss a ketan plaintiff or a ketan case unless, quote, there's glaring evidence of fraud or bad faith by the state. And the Buehler-Shadd case also contained another important comment, which is the court system should really not, quote, unquote, second guess the AG's office. It's a very unique circumstance wherein we understand normally we lawyers and judges in courts get to decide issues of law or issues of fact. This is a unique circumstance where there's great deference paid to the AG's office. So I will, on that note, I just want to quote the third district opinion issued in SEPORTA in December of 2016, because I think this is key language that hopefully will be incorporated into the opinion in this case. It states, the state is the real party in interest in ketan actions. Ketan plaintiffs, acting as statutorily designated agents for the state, may proceed only with the consent of the attorney general and remain completely subordinate to the attorney general at all times. And that was the basis why in the SEPORTA case, that a case where the AG's office intervened, decided not to pursue the case, allowed the plaintiff to pursue the action, the SEPORTA action went forward. Later, though, when the SEPORTA plaintiff succeeded in getting a court order that would have required the attorney general's office to turn over its investigation file, the attorney general acted decisively, stepped into court and said, you know what, judge, we're going to dismiss this case. And that decision was sustained. And that's the exact type of power exercise that I think should influence this court's decision of the Vlandingham or advanced positions case. Now, turning to the facts at hand, the key, this case has a long history. It would take us hours to review all of it. So let's not go there. More importantly, the key facts in this case and the procedural history begins in February 2006 and it ends in October 2008. In February 2006, a gentleman named Mr. Donaldson shows up and for the first time discloses to the State of Illinois in a verified complaint that there are MRI lease arrangements. And the MRI lease arrangement, as I understand it, is simply that a physician refers a patient to an MRI center, the MRI center takes a scan, invoices the physician, and the physician turns around and globally bills the insurance company and gets paid and arguably makes a profit off that transaction. So beginning in February 2006, AG's office investigates that case, intervenes in the case, resolves the case via settlement, unseals the case, it's widely publicized in January of 2007. More than four months later, the Vallandighams essentially filed the same case. The problem for the Vallandighams, though, is that they are now the second to file. So they have to satisfy what's known as the original source rule. They have to convince the AG's office that they had actual direct personal knowledge, real evidence. So in order to share in that bounty, in order for there to be a pot of gold at the end of the rainbow, the quid pro quo that you're offering the State is you're showing up and giving them that direct personal knowledge. The Vallandighams just didn't do that. They were not former employees of either the defendants, they were not former employees of the physician group. They were basically competitors. So to show up and say, we know these leases exist, we've had physicians tell us these leases exist, well, that's just not helpful to the State whatsoever. So in any event, I think moving on, the key document in this case is certainly the motion to dismiss filed by the AG's office, which is at pages 471 through 474 of our supplemental record, which we filed. Just a few things I want to highlight there. Paragraph one, the Vallandighams actually consented to their dismissal with prejudice. Also, the AG's office, which we have to believe what they say, is that they say we've been investigating these leases for a long time and we're going to continue to do so. They also specifically provided the order which Judge Billick entered, and it's the same order which deprived the Circuit Court of Will County of subject matter jurisdiction. It states very clearly, the Vallandighams are not original sources of the information on which this action is based, within the meaning of 30B of the ICFBA. It goes on to dismiss the Vallandighams as interests of persons, and the only entity, and dismiss count four without prejudice, the only entity that was authorized to refile that case was the State of Illinois. So, I know I'm running out of time, and I want to turn this over to Mr. Manelis soon, but I'm going to go back to the, as a threshold matter, the errors we believe that were committed by the trial court here. One, trial court does lack subject matter jurisdiction. The case should have been dismissed immediately. However, if that court or this court decides to review that 2008 order, that should be, the standard should be no different than the standard which was articulated in the Bieler Shad, which is, if this panel does not see any glaring evidence of bad faith or fraud, then that order should stand. And by the same token, I'll leave you with this thought. It really is not up to the judiciary to second-guess the AG's determination that the Vallandighams were not original sources and could not proceed with the case. So, I thank you for your time, and I look forward to the rebuttal. Mr. Manelis? Good morning, Your Honors. If I may know, I'm Mr. Eddie Manelis on behalf of the defendant, FDG, defendant-accused FDG. Your Honors, I was going to take a look briefly at the second question that was certified by the trial court for this appeal, namely whether the advanced physicians is the appropriate party plaintiff. The legal issue, specifically the question, is the legal issue of whether advanced physicians, SC, satisfies the definition of an interested person as defined by Section 15 of the ICFPA, given that Richard and Dana Vallandigham were QITAM plaintiffs who filed and served a copy of the complaint on the state's attorney and the attorney general. Does that certified question presuppose that the trial court has jurisdiction? I think that question goes directly to whether the court has jurisdiction, whether there's a party that can be a proper party in this action. So, I do believe it does. And the statute specifically provides that an interested person, including an insurer, may bring a civil action for violation of the Act. And that's Section 15A of the Act. Section 15B, the rest of the statute basically, the rest of Section 15, has the requirements that would allow a private person to go ahead and bring this type of action against other persons for violations of the Act. And these basically require participation of the state's attorney or the attorney general's office. They require the person bringing the action to notify the state's attorney and the attorney general of all of the complaint and a written disclosure of substantially all the material evidence the person has. That's Section 15B. It requires that the complaint be filed in camera and remain under seal for at least 60 days. And then it provides in Section 15C what the attorney general and the state's attorney may do and what they are required to do in this case. In this case, the present case is on appeal. That never occurred. None of those requirements actually occurred here. The only notice to the attorney general that satisfies the requirements of the statute was done in the original Cook County action in 2007 when the Belandinghams were the plaintiffs. That's the dismissal order that dismissed them as not being original source. That's the order that dismissed them finding that the allegations had previously been disclosed. So the ICFPA claim is out for the Belandinghams. They bring the other actions. And again, I won't go into the full history, but that Cook County action was severed. Multiple actions. We end up with Provena in two cases in Will County. It's not until 2010 when, with respect to FDG, plaintiff files plaintiffs. And I use, it's hard to say. We added the Belandinghams as the original plaintiffs in 2010. Advanced Physicians, without authority from the court, files an amended complaint. Isn't Advanced Physicians the Belandinghams? It is. They are. And so it's their company and they're the sole owners of the company. And so Advanced Physicians files that case, the first amended complaint, adds in the same ICFPA claim based on the disclosures that was done in 2007, but they don't notify the attorney general. They don't file, they don't notify the attorney general. They do not file this under seal or in camera. And the problem with that is it doesn't trigger the attorney general to do something. The attorney general, under the statute, has to do one of two things. One, proceed with the case themselves, and that's section 15C, D2, D1, or notify the court that they've declined to take the action. And that allows the private person to proceed with the action. The attorney general never did that. They've never advised the court in these cases that it's okay for Advanced Physicians to continue with the case. And those are the two required actions which are required under the statute. We also have an argument that plaintiff is not an interested person within the meaning of the statute, and we'll just note briefly that that is a different standard than the standard QTAM plaintiff provision of the False Claims Act, which just says any person. So we believe there has to be a causal connection with this litigation, which is just too tenuous as raised by Advanced Physicians being a competitor. So you have a competitor saying that makes us interested, but that is a very tenuous connection. It's not part of the remedial purposes of the statute, and we believe that the cases that are cited by plaintiff on this point show that it is not the same type of standard where they have a direct pecuniary interest in the outcome of the litigation. Counsel, whether there's a tenuous relationship is a question of fact. Is that correct? I think it's something that could be dismissed out on a 215. I think it is a question of fact, but I think there has to be some showing of some sort of connection. And here, there's no connection within the meaning of the statute for the purposes of this type of litigation for insurance fraud. But does a Rule 308 appeal allow us to resolve questions of fact or to review questions of fact? A Rule 308 petition only allows us to consider questions of law, whether it's a material dispute over, let's say, the meaning of interested party or interested person. I agree that 308 only allows the legal question to be addressed, but I don't think there's any factual dispute as to AP status as only being a competitor of FDG and Provena. So if that's the only interest, and we have no factual dispute that that's the only interest that the advanced position has in connection with this case as being a competitor of the defendant's, we believe as a matter of law, that connection is too tenuous for purposes of this action. Thank you. Mr. Adams. Good morning, Your Honors. My name is Hall Adams. I represent Advanced Physicians. May it please the Court and counsel, Let me first say that as an appellate dabbler and a first-timer in your court, I'm your staff's worst nightmare, and your staff couldn't have been more patient and helpful and gracious while we've been proceeding here, and you've been my compliments. The first certified question addresses subject matter jurisdiction. Jurisdiction is a concept which is only apparent in the statutory language in 30B, and it provides that subject matter jurisdiction exists for any person who is an original source of information bringing the action. In resolving this question, it's important that we dispense with the conflation of the balancing case, which this is not, or the first lawsuit that was filed by the lending hands in the Circuit Court of Cook County, which this is not. Advanced Physicians does not, in the pending lawsuit, have an interest in sponging off the Donaldson windfall and acknowledges that the complaint that was voluntarily dismissed by Judge Billick in the Circuit Court of Cook County, from which they themselves were dismissed with prejudice as related plaintiffs, was proper. That complaint was a different complaint in that it alleged different facts, different facilities, and different participants in these illegal lease transactions, principally on the reforming physician's side, than do the lawsuits that are now pending in the Circuit Court of Cook County against both PGMI and Advanced Physicians. It is a mistake, therefore, from the inception of the defendant's argument to argue that Judge Billick's order in the earlier filed Circuit Court of Cook County case disposes of these two cases. That is a fallacy that runs through their whole jurisdictional argument. The plaintiff, Advanced Physicians, has no quarrel with the defendant's proposition that the Illinois Attorney General, or under other circumstances would be the State's Attorney of Will County, can't exercise significant control over a lawsuit brought under this statute. Based upon the record before this court, the Illinois Attorney General has been in the loop, albeit, I have to acknowledge, not in a way that reflects the formalities having been properly followed by the plaintiff in this case, but the Attorney General has been in the loop since, if my recollection of the record is correct, 2013. And the Illinois Attorney General has never taken any steps to dismiss these lawsuits. As defendants correctly point out, the Attorney General has an almost absolute right to do upon motion in the Circuit Court, which the Attorney General has not done. So this isn't a jurisdictional question at all. It's a question of whether the Attorney General elects to do something which it has not yet elected to do. Well, do those elections under the statute come only after the Attorney General has been given proper notice as required by the statute? After the Attorney General has been given notice, correct. I would suggest to the court that whether the notice was given in the proper form is just that, is a matter of form over substance. Our record does reflect the active involvement in communication with the Attorney General's office in these two cases since approximately 2013. And I come to these pleadings as I think the third lawyer representing advanced physicians, and in fairness to this court and my opponents, I do have to acknowledge that the pleading that added the Illinois Claim Fraud Prevention Act claim in both cases could have been handled in a formally more precise fashion. But to dismiss these very important claims. The claims weren't dismissed, though, were they? Well, I suppose I should say to dispose of here these very important claims by exalting form over substance would be unfortunate. And this brings me to the second issue, and that is this question of interested party. And I would point out first that the certified question number two is a very much narrower question than who generally is an interested party under this statute, a question that has never been decided by an appellate court in this state. The question is really whether by the substitution of advanced physicians SC for Richard Vlandingham, advanced physicians isn't and can't be an interested party. The resolution of that question in favor of advanced physicians requires only that this court apply very common black-letter principles of principal and agent law. Advanced physicians were substituted as a plaintiff because it is the principal in real party and interest. Doctors, plural, Vlandingham are its agents and shareholders. But that's the narrow question that's before this court. Does it require a resolution of factual issues? To go beyond that question and look at whether advanced physicians in a broader sense is an interested party under the statute, not whether merely the substitution negates advanced physician's standing as an interested party, would require an analysis of factual issues that would be inappropriate under Rule 308 of certification. So why do you think the second question is appropriate? I think I'm reading you correctly that you think it is an appropriate question for 308 review. You mentioned it's very narrow. The narrow question is, as framed by Judge Rossi, is whether the substitution of advanced physicians SC as the party plaintiff for Richard Vlandingham makes advanced physicians not a proper interested party. To go beyond that and ask whether Vlandingham or advanced physicians is a proper interested party would require an extensive factual examination that Judge Powers conducted when he repeatedly denied 2619 and so many judgment motions in this circuit court and concluded that advanced physicians was an interested party. And even though I believe it goes beyond the scope of that question, I point out that it bears appreciating that the interested parties under this statute are broader and different than under the Whistleblower Protection Act and False Claims Act cases on which the defendant relies. This statute looks primarily to patient welfare. And that's what this case is primarily about. By entering into these kickback schemes, couched as referrals, what the defendants were doing was depriving patients of the very best available medical services, the very best then available MRI technology. And so whereas under the Whistleblower Protection Act and False Claims Act cases in law, the party that's being protected is always only the state or the federal government  There are broader concerns addressed by this statute that shouldn't be lost on this court in deciding this case. Mr. Adams? Yes. When the case was dismissed in Cook County, the trial court made a specific factual finding that the Vanlandinghams, am I saying that correctly, were not interested parties. Yes. The Vanlandinghams are the sole owners of advanced positions. Correct. So under the law, they're persons in privity. So can they be interested parties? They can be in these cases for the reason that I mentioned earlier, which is that these cases allege different parties, different effects, different facilities, then did the case from which the Vanlandinghams were dismissed with prejudice as interested parties. These parties were the same, were they not? These defendants were the same. And the idea of the unlawful referral fee was common to the two cases. But one of the cases that's discussed in both sets of briefs is Balthazar, Balatazar case, is that it's a mistake to look in this analysis at whether you're talking about a general scheme that's taking place in the market versus the specific facts that are alleged in a particular case. In the first Cook County case brought by the Vanlandinghams, they made specific factual allegations involving specific facilities and specific referring positions that involved these two defendants. In the second cases that were filed in the circuit court of Cook County by the Vanlandinghams that were then transferred to the circuit court of Will County that bring us here today, they alleged different sets of facts, different referring positions in different facilities, different claims altogether of being involved in this common unlawful referral scheme. I point out further, Your Honor, that the Vanlandinghams actually agreed with or didn't contest the finding that they weren't the original source in the first case in Cook County. They do contest that in these cases and in the circuit court of Will County, Judge Powers has found that advanced physicians is an original source and that they are interested parties on a very extensive factual record. I hope that answers your question. Not completely, but that's okay. Since your train of thought has been interrupted, I have a couple of questions as well. Is advanced physicians a corporation? It is. So doesn't it have its own identity? And in order to decide whether the Vanlandinghams are the owners, don't we have to pierce the corporate bail? I don't think you have to pierce the corporate bail. All you have to do is apply principles of principal and agent law. The Vanlandinghams are the agent of the corporate principal and their knowledge can be imputed to one another. Did Judge Powers consider the difference in the complaint that originated in Cook County and stayed in Cook County as compared to the complaint that began in Cook County and is now before us because it was transferred to Will County? Did he consider the differences in those complaints and decide, as a matter of law, raise judicata didn't apply? Yes, necessarily. Do you think he was right? Yes. With regard to the very first question, I'm curious as to why it's so broad. The first question is, just read it, I know you all know it, but whether the Illinois Attorney General's motion to dismiss the Vanlandinghams as interested persons with prejudice dated October 17, 2008, combined with the order which granted the motion deprived all subsequent courts of subject matter jurisdiction. Why so broad? Well, as this court may recall, and the record would reflect, we took issue with that certified question. I can't speak for Judge Rossi who certified that question over our objection. Well, let's speak to how an answer to that question might truncate other litigation. If this question were answered in the affirmative, it would effectively give these defendants and any other provider of radiographic services or diagnostic test services who engage in these unlawful referral schemes cover for all time in all courts in this state. With Illinois from the Vanlandinghams. I'm not sure you can accept that argument quite that narrowly. The first certified question, as Justice Wright pointed out, is exceedingly broad. And I think that's a real peril there. It seems like the problem is that subject matter jurisdiction is any justiciable matter the court can hear. Nothing that is done with regard to a motion in a case can deprive the court of subject matter jurisdiction that comes from the Constitution. We agree. The way the court has subject matter jurisdiction. We agree completely with that. And the defense argument here attempts to conflate the Attorney General's authority to get involved with and ask courts with jurisdiction to dismiss these cases. And where I start, therefore, which is that the Attorney General, for the eight years or so that this case has been pending in the Circuit Court of York County, has never done that. That's because you never told them about it. Nothing was done with the filing of this case that triggered the Attorney General's notice that the case existed until 2014 when you sent the letter. I don't disagree, Your Honor, that the initiation of the Claim for Prevention Act in the Will County case was not formally precise. It was not conventional. Nevertheless, the Attorney General has been aware of this action and has been in communication with counsel and so forth since 2014. And hasn't taken any steps to intervene, to dismiss the case, et cetera, like the office did in the original Blanningham Cook County case. And I'm going to interrupt you again. Sure. Judge Powers has carefully considered the two issues, whether raised judicata applies and whether the Circuit Court lacked subject matter jurisdiction. I presume you agree with his rulings. Is that correct? That is correct. So he doesn't need our guidance at this point. He's made his decision. True. And I'd finish then by saying this. When you come to argument appeal, you pull the briefs out of the cupboard that you haven't looked at for quite some time and are horrified to see a few typos here and there. As a one-man band, I could have used an extra set of eyes, and I recall one page where I think I had a triple negative. It sounds from your questions as though you got the message anyhow, and I appreciate your patience as well. Thanks very much. Any more rebuttal? Based on the comments from the bench, I did want to clarify, try to clarify a couple of issues. I believe Justice Wright asked about why this is an issue of jurisdiction, and if there's any blame for an over-broad question, number one, then I would say it would be me. It's subject matter jurisdiction over an ICFPA claim prosecuted by the Holanians. So Justice Schmitt is... Are we at liberty to modify the certified question? I don't know the answer to that question, but I can only... I appreciate you're a candidate.  Right, but the question of whether the circuit court at Will County has jurisdiction over this action, certainly the court is empowered, I believe, to make that decision, and I understand, Justice McDade, that courts are generally courts of general jurisdiction. But I would say this. The reason the Attorney General put in the order the fact that dismissing the Volanigans with prejudice as interested parties and also putting in that they were not original sources is that triggers the jurisdictional bar, which is in Section 30B. So then I also want to comment, I agree with what Justice Schmitt said, because he said, isn't advanced physicians the Volanigans? And that is correct. A corporation cannot verify a complaint with personal knowledge. And so all of these complaints and all of these various complaints have been verified by the Volanigans. So there's no difference between the knowledge possessed by advanced physicians. The other comment I would have is that this concept that this case now pending is somehow new and different than the case originally filed by the Volanigans, that simply can't be. You can't have your cake and eat it, too. You can't say, we filed this action with the State of Illinois. We're a proper key tamplainist, and then say, well, this is a totally different action. If this really is a totally different case now pending, then neither the Volanigans nor advanced physicians have satisfied any of the statutory prerequisites that I can quickly just reference in the statute itself. Essentially, an interested person has to bring the civil action and file it under seal with the State of Illinois. So if this is a new case, that never occurred, whether it's advanced physicians or any other party. That is what triggers the vetting process from the Attorney General's office. And the concept, I can't speak for the motivations of the Attorney General's office. I think they more or less ignored this case in many respects. But if we are to hold that the Attorney General has to show up twice and dismiss an action twice or dismiss key tamplainants twice, then we're headed for procedural chaos with key tam litigation. Because the Attorney General did dismiss this case without prejudice, with leave to file, refile only by the State of Illinois. So... Those comments that you just made are logical. Yes. Which questions, which certified questions do you think those comments apply to? Those directly apply to the second question, which is, if I may... Whether advanced physicians... Whether... Satisfies the definition of interested persons. Right. Whether advanced physicians... I'm flipping through my papers here because I don't want to misquote. Of course, now the exact question is eluding me. I can hand it to you if you would like to look at it. It's recited in briefs. Right. Well, the question reads, whether advanced physicians satisfies the definition of an interested person under the ICFPA, given that the Blandinghams filed the Key Tam Act. Right. So, to be an interested person, there's multiple criteria. But first and foremost, you have to file under seal and give all material evidence to the State, which they have not done. An interested person also cannot... The advanced physicians also runs into the jurisdictional bar, because advanced physicians, their knowledge is identical to the Blandinghams. So, theoretically, if they had filed, that would be one thing. But they never did. The other thing I want to comment on quickly, because Justice Wright has raised this issue of whether this court or Justice Powers could make determinations issues of fact. And I cannot emphasize enough that the Bieler-Schad case and this court's case in Seporda, and going all the way back to Scicchiti, this is an unusual circumstance where a court or a jury doesn't decide issues of fact. The Attorney General's Office makes those decisions. That is the exclusive province, and I understand it. It's confusing. And when I try to explain this case to other lawyers, they look at me like they don't get it. So, I understand it, because we're all trained to believe that we argue, we decide. This is a rare circumstance. We're known. The Illinois Supreme Court has spoken. The First District has spoken. And no greater court than the Third District Republic Court of the State of Illinois has spoken that the Attorney General's Office has near complete control. So, if this, and this, and frankly, I have great respect for him, but that's the issue that eluded Judge Powers. He simply did not understand that this is a role reversal. It is extremely rare that a litigant, meaning the Attorney General of the State of Illinois, gets to dismiss a plaintiff. It doesn't make sense. But there's a very good reason for it. All of these claims are on behalf of the State of Illinois. And that's why I started my argument with this is an issue of separation of powers. This is a unique circumstance where this court should be somewhat hands-off. And the Bieler-Shad decision went so far, they basically said, we hesitate to call it a rubber stamp. But, it is not our role to second-guess what the Attorney General does with respect to the control of the Keytown litigation. Time's up, Counselor. Okay. I have a procedural question for you. Yes. When was the complaint filed in Cook County that was later transferred to Will County? Who was the main plaintiff? I was thinking there was a substitution of parties. Yes, Justice. And we covered that. I did the briefs. I didn't. Yeah. It was the Vallandighams, I believe. It was the Vallandighams in Cook County. And it was the Vallandighams again when the case was transferred to Will County. And I think it was the second amendment complaint where suddenly advanced positions appeared. Now, in theory, if advanced positions were going to say, I'm now a Keytown plaintiff, that would, by definition, by the statute, that would have had to have been filed with the state's attorney and the Attorney General's office, which it never was. One more question for you. If we had not allowed your petition for 308 review, where would you be? Well, we'd be… The case would roll forward. They did a case, eventually, one would think would go to trial. And eventually these issues would be addressed on appeal. We would be back here again, I would say. And I can't emphasize enough, I guess, if I get one closing comment. I am imploring you, do not usurp the power of the Attorney General. The Attorney General spoke loudly and clearly. If you look at the order that they crafted, it was clear exactly what they wanted to do. The Vallandighams consented to the dismissal. Their dismissal is in the interest of persons with prejudice. Changing to advanced positions does not cure that. They allowed the Vallandighams to go forward with counts one, two, and three because those were personal counts. But they terminated forever the Vallandighams' power to step in as Keytown plaintiffs for the state. So I thank you very much for your time. If there's any more questions, I'll answer them. Thank you for your briefs. Very helpful. And as to typos, you'll see them in my orders occasionally. Well, it's been an honor and a privilege to be here. Thank you. Okay. Well, thank you all for your arguments here this morning. And I will be taking that advisement that this position will be issued. Right now, we'll be in a brief recess.